```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

NY DRILLING, INC.,

                    Plaintiff,              MEMORANDUM & ORDER
                                             20-CV-3111(EK)(RER)
        -against-

TJM, INC. LLC a/k/a TJM DRILLING
EQUIPMENT & SUPPLY COMPANY a/k/a TJM
INC. DRILLING EQUIPMENT & SUPPLY
COMPANY a/k/a TJM DRILL TOOLS,

                    Defendant.

--------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff NY Drilling, Inc. purchased two "hydraulic crawler drilling rigs" from defendant TJM, Inc. pursuant to written contracts of sale. Plaintiff does not say what use it intended for the rigs, but does allege that they malfunctioned multiple times and had to be taken out of service. Invoking the Court's diversity jurisdiction, NY Drilling alleges that TJM breached the implied warranties of merchantability and fitness by its sale of defective rigs.

Defendant now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), on the basis that the parties' written contracts explicitly disclaim those warranties. For the reasons set forth below, I GRANT Defendant's motion to dismiss.

## I. Background

### A. Factual Background

The following factual allegations are taken from Plaintiff's second amended complaint ("SAC") and are assumed to be true for purposes of this Order. There are three primary players in this story:

- *HD Engineering* manufactured the drills in question. SAC ¶ 6, ECF No. 22.[1] HDE is based in Hong Kong and is not a party to this action.

- Defendant *TJM, Inc.* is located in Pennsylvania and is the exclusive distributor of HDE's drilling rigs in the United States. *Id*. ¶¶ 2, 23.[2] When HDE sold the rigs at issue to TJM, the purchase agreements accompanying the rigs contained a one-year "warranty agreement" between HDE and TJM (that is, between manufacturer and distributor). *Id.* ¶¶ 6, 32-33. NY

---

[1] The complaint refers to this entity both as HD Engineering and also "Hong Kong Drill," but primarily as the former. For consistency with the parties' nomenclature, this order refers to the entity as HD Engineering (or "HDE" in short form).

[2] The complaint refers to TJM as "TJM Inc. LLC" without explaining the significance of the two corporate designations. TJM uses both designations in the relevant contracts.

2

> Drilling is nowhere named or referred to in that agreement.

- Plaintiff *NY Drilling* is a construction company based in Queens. *Id.* ¶ 1. As relevant here, NY Drilling purchased two drilling rigs from TJM in July and November of 2018 — both times pursuant to written contracts. HDE was not a party to either purchase document.

NY Drilling bought the first drilling rig, Model HD110-4T, from TJM in July of 2018. The purchase price was $482,137. *Id.* ¶ 6. Wayne Fried, a representative of NY Drilling, executed the purchase contract — titled "Final Revised & Updated Quotation" — to effectuate this purchase. ECF No. 19-1 at 2 ("July 2018 Contract"). Immediately below Fried's signature block is a warranty disclaimer:

> TJM INC MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT, AND AGREES THAT NO WARRANTY IS IMPLIED WITH RESPECT TO THE CONDITION, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. NO OTHER TERMS AND CONDITIONS SHALL SUPERSEDE THIS PROPOSAL. BY ORDERING ANY ITEMS ON THIS PROPOSAL WITH OR WITHOUT SIGNING THIS YOU AND YOUR COMPANY HEREBY UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS STATED HERE IN [SIC]. THIS PARAGRAPH MAY NOT BE MODIFIED, AMENDED, DISCHARGED OR TERMINATED EXCEPT IN WRITING AND SIGNED BY THE PARTIES HERETO.

*Id.* at 4. As discussed below, Plaintiff challenges the enforceability of this disclaimer.

The HD110-4T rig malfunctioned shortly after delivery. In late July, the "entire front of the machine collaps[ed]." SAC ¶ 7. TJM delivered replacement parts and repaired the machine. *Id*. That rig then "failed" again a few months later. *Id*. ¶ 8. TJM then replaced the HD110-46 with another rig from HDE — this time model "HD200A." *Id*.[3] The parties executed a separate contract for the HD200A on November 28, 2018. ECF No. 19-1 at 8 ("November 2018 Contract"). This document included the same warranty disclaimer in the same location. *Id*. at 10.

The HD200A also malfunctioned on a number of occasions, and TJM made at least two repairs. SAC ¶¶ 9-10. In July 2019, NY Drilling notified TJM that "a section of the mast was failing[,] which would cause a full structural failure." *Id*. ¶¶ 11-12. In response, TJM "picked up" the rig at the end of August. *Id*. ¶ 12. TJM had not repaired or returned the machine as of September 2021. *Id*. ¶ 19.

**B.   Procedural Background**

Plaintiff brought this litigation in July 2020. It has since amended its original complaint twice in response to potential deficiencies identified by TJM and the Court. The second amended complaint, filed September 24, 2021, alleges

---

[3] It is not clear how much additional money, if any, NY Drilling actually paid TJM for the new HD200A drill. The contract for that drill lists a purchase price of $568,614, but says only "Key Bank Financing" under the payment terms. ECF 19-1 at 9.

4

(1) a breach of the implied warranty of merchantability (Count One); (2) breach of the implied warranty of fitness (Count Two); (3) that, as a result of TJM's breach of the implied warranties, TJM owes NY Drilling $93,000 in replacement and repair costs (Count Three); and (4) breach of warranty agreement between TJM and HDE (Count Four).  SAC at 4-7.  The fourth count alleges that the warranty agreement between TJM and HDE extended to NY Drilling as a third-party beneficiary, and that TJM breached that warranty agreement by performing inadequate repairs.  *Id.* at 7, ¶¶ 30-36.  Plaintiff seeks $369,155.00 in damages for this breach — the money it finds itself out-of-pocket, plus the money it has paid Defendant pursuant to the parties' financing terms.  *Id.* ¶ 37.

## II.  Legal Standard

In reviewing a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *E.g., Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  Only "a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5

(2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

### III. Discussion

**A. Breach of Implied Warranties**

NY Drilling alleges, in its first cause of action, that TJM breached the implied warranty of merchantability by selling rigs that failed to "perform for the purpose for which they were intended." SAC ¶¶ 16-17. In its second cause of action, NY Drilling alleges that TJM breached the implied warranty of fitness because it "knew . . . the intended purpose for which [NY Drilling] was to use the drilling rigs" and made "representations . . . that these two drilling rigs were capable of performing in accordance with [NY Drilling's] specifications." *Id.* ¶ 22-23.

New York's Uniform Commercial Code dictates that every contract carries implied warranties of merchantability (under Section 2-314) and fitness (Section 2-315), unless those warranties are "excluded or modified." The contracts for both drilling rigs contain (identical) warranty disclaimers, as noted above, but the parties dispute whether the disclaimers suffice to exclude the implied warranties at issue.

Section 2-316 sets forth the standard for the exclusion of implied warranties under the New York U.C.C. To exclude an implied warranty of merchantability, a contract's

6

disclaimer "must mention merchantability and in case of a writing must be conspicuous." N.Y. U.C.C. Law § 2-316(2). Similarly, an exclusion of the implied warranty of fitness "must be by a writing and conspicuous." *Id*. The statute defines "conspicuous" in a common-sense way: it means "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." N.Y. U.C.C. Law § 1-201(b)(10).[4] "Whether a term is 'conspicuous' or not is a decision for the court." *Id.*

Here, the disclaimer appears, in each contract, in a paragraph directly below the signature block for NY Drilling. The disclaimer is set off from the signature block, and other boilerplate terms in the contract, by a few lines of blank space. Its text is in all capital letters. It appears to be of the same size font as the majority of the contract, except that certain shipment and

---

[4] Section 1-210(b) used to contain specific examples of conspicuousness, but the state legislature deleted them in 2014. The prior version stated: "A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." U.C.C. 1-210(b)(1) (in effect through 2014). The deletion of these examples presumably reflects the legislature's desire to avoid the implication that any specific type of "conspicuousness" is required. *Cf. INS v. Cardoza-Fonseca*, 480 U.S. 421, 442–43 (1987) ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language."); *see also* 1A Sutherland Statutory Construction § 22:1 (7th ed.) (omission of provision in amended statute "is treated as amendatory. Generally, such an act indicates a legislative intention that the meaning of the statute has been changed and raises a presumption that the legislature intended to change the law.").

7

payment terms are larger and in bold, as are certain headings.[5]

One might reasonably question the conspicuousness of a disclaimer appearing *after* the signature blocks in a contract.  By the time a contract's reader gets to the signature blocks, he should generally understand what he is signing.  Here, the disclaimers not only follow the signature blocks, they are grouped with text that is clearly *not* part of the contracts: for example, text exhorting the reader to "LOOK @ OUR FACEBOOK PAGE!!"  *E.g.*, ECF No. 19-1 at 4.  This fact weighs meaningfully against a finding of conspicuousness.

Moreover, the contracts contain no language preceding the signature blocks that directs the reader to the disclaimers after them.  This is in contrast to other cases containing such a cross-reference.  *See, e.g.*, *Martino v. MarineMax Ne., LLC*, No. 17-CV-4708, 2018 WL 6199557, at *4 (E.D.N.Y. Nov. 28, 2018) ("Immediately above the signature line, in all capital, bolded letters so as to make it conspicuous, [was] the admonition to read the

---

[5] The contracts attached to the amended complaint also appeared to be in sightly faded font.  Because Defendant argued that this was not a correct representation of the documents, I ordered Defendant to produce, if possible, clearer versions of the agreements.  The contracts Defendant produced are indeed in clear text.  ECF No. 19-1.

8

reverse side for 'important limitations of warranties.'"); *see also Am. Dev. Grp., LLC v. Island Robots of Fla.*, No. 17-CV-3223, 2019 WL 5790265, at *3 (E.D.N.Y. Oct. 4, 2019), *report and recommendation adopted*, 2019 WL 5788319 (E.D.N.Y. Nov. 6, 2019) (limited warranty was first stated on page 2 of contract, and "a lengthy full-page warranty on the last page, entitled, '. . . One-Year Warranty,' set[] out more details").

The case law in New York State is relatively quiet on the subject of whether a disclaimer must precede the signature blocks to be conspicuous. The Defendant here has identified only one New York case — decided by a "Justice Court" in 1992 — addressing the issue.[6] Courts in other states, however, have frequently found disclaimers appearing below a signature line to be conspicuous. *See, e.g.*, *Vision Graphics, Inc. v. E.I. Du Pont de Nemours & Co.*, 41 F. Supp. 2d 93, 99 (D. Mass. 1999) (conspicuous disclaimer "appeared right below the parties' signature line"); *Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So. 2d 922, 927 (Ala. 1994) (conspicuous disclaimer "appeared in

---

[6] *See Ireland v. J.L.'s Auto Sales, Inc.*, 156 Misc. 2d 845, 848 (Just. Ct. of Town of Arcadia 1992). The *Ireland* contract directed the reader to "see other side for additional terms" in capital letters and "large, dark print" appearing one inch below the plaintiff's signature. *Id.* The "other side," in turn, included a disclaimer that the Justice Court found conspicuous. *Id.* Though the decision is well-reasoned, its utility is perhaps limited by the fact that Justice Courts hear only small claims and the presiding Justices are not required to be lawyers.

the center of the form, immediately below the line for a signature acknowledging receipt"). These out-of-state cases applied definitions of "conspicuous" that are substantially identical to the New York U.C.C.'s. *See Vision Graphics*, 41 F. Supp. 2d at 98; *Fleming Farms*, 631 So. 2d at 926.

Here, in the end, the disclaimers at issue bear characteristics that are sufficiently conspicuous to overcome their suboptimal placement. The text is in all capital letters and it clearly and explicitly disclaims the warranties of fitness and merchantability. *See Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 200 (E.D.N.Y. 2010) (disclaimer conspicuous because it "[wa]s in capital letters in a separate block paragraph and specifically mention[ed] merchantability . . . [and] fitness"); *Maltz v. Union Carbide Chemicals & Plastics Co.*, 992 F. Supp. 286, 304 (S.D.N.Y. 1998) ("The warranty disclaimer is in capital letters and specifies the warranties that are being disclaimed."). The disclaimer is also set off in its own discrete paragraph, in a font and type size that differs from the text surrounding it. Taken together, these characteristics are sufficient in light of the weight of persuasive (if not binding) authority above.

10

Indeed, courts have found less prominent disclaimers to be conspicuous. In *Ireland*, for example, the disclaimer was held to be conspicuous even though it not only came after the signature blocks, but also appeared on the reverse side of that last page — it was enough, in that case, that a notation below the signature line directed the reader to turn the page. *Ireland*, 156 Misc. 2d at 848; *see also Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Products Inc.*, 62 U.C.C. Rep. Serv. 2d 371 (S.D. Ohio 2007) (disclaimer was conspicuous where language "beneath the signature line," in capital letters and partially bolded text, directed reader to warranty exclusion on "the reverse side"); *Rudy's Glass Constr. Co. v. E.F. Johnson, Co.*, 404 So.2d 1087, 1089 (Fla. Dist. Ct. App. 1981) (statement "immediately below the signature" referenced terms and conditions on the reverse side of the document; that disclaimer was conspicuous where it was in all capital letters and set forth in a separate paragraph titled "Disclaimer of Warranties").

Viewed holistically, the disclaimer conspicuously excluded the implied warranties of fitness and merchantability from the contracts at issue. Thus, Counts One and Two, which are predicated on those implied warranties, must be dismissed.

**B.   Agency**

NY Drilling's third claim is difficult to understand, as it sounds more in the language of remedy than any particular cause of action.  *See* SAC ¶ 29 ("As a result of the Defendant's breach of the Implied Warranties of Merchantability and Fitness, Defendant should reimburse Plaintiff its out-of-pocket expenses. . . .").  In its opposition to TJM's motion to dismiss, NY Drilling now argues that this count is actually a "common law breach of contract claim" grounded in the supposed principal-agent relationship between the manufacturer (HDE) and distributor (TJM).  ECF No. 14 at 2.  More specifically, NY Drilling claims that because TJM is an "agent" for HDE, it "is charged with enforcing the manufacturer's warranty" — the warranty issued by HDE to TJM.  *Id*.  These allegations, however, are nowhere to be found in the SAC.  Count Three, as written, merely claims a different set of damages for the same breaches of the implied warranties in Counts One and Two.  It is therefore dismissed for the reasons set out above concerning those counts.

**C.   Third-Party Beneficiary Status**

Plaintiff's fourth claim asserts that it is a third-party beneficiary of the one-year warranty contract between HDE and TJM, and that TJM breached that contract.  *Id.* ¶¶ 30-37.  This claim fails for several reasons.  First, NY Drilling has

12

not alleged sufficient facts to establish third-party beneficiary status. Under New York law, a third party may enforce rights under a contract only when "no one other than the third party can recover if the promisor breaches the contract or . . . the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985); *see also Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (2018).

Here, NY Drilling's complaint does not allege that it is the only party that could recover if HDE breached the warranty, and the warranty contract evidences no intent to permit performance by NY Drilling or any other third party. The warranty expressly states that the contract is between HDE and "the Buyer," which is defined as "any body corporate, firm, individual or any agent thereof whom HD contracts with under the Contract being mutually signed" — *i.e.*, TJM. *See* ECF No. 22 at 15 § 1. Moreover, NY Drilling acknowledges that the contract is "by and between TJM and HD Engineering." SAC ¶ 6. NY Drilling's complaint thus fails to satisfy the standard for third-party beneficiary status.

Second, even if NY Drilling were a third-party beneficiary, the counterparty to the warranty provision would be HDE – not TJM. HDE (which is not a party here) is the only

13

party providing warranties under its agreement with TJM. *See e.g.*, ECF No. 22 at 16 § 6.1-2 ("HD guarantees . . ."); *see also* Pl.'s Resp. to Ltr. Renewing Mot. to Dismiss, ECF No. 24 at 2. Thus, even if NY Drilling had adequately alleged third-party status to the agreement between HDE and TJM, it still would not be in a position to enforce a warranty in this action, as currently constituted.

Third, the warranty agreement contains a provision mandating that the "Conditions of Contract and related documents . . . be governed and construed in accordance with the law of Hong Kong." ECF No. 22 at 17 § 8. NY Drilling offers no explanation for why it would be a third-party beneficiary *under Hong Kong law* or why Hong Kong law should not apply. In fact, it fails entirely to address the issue of governing law.

Fourth, the warranty agreement provides for mandatory arbitration in Hong Kong. *See id.* at 17 § 8. And "a non-signatory third party beneficiary suing for breach of contract is bound by an arbitration clause in the contract." *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 396 (E.D.N.Y. 2013). NY Drilling offers no legal argument as to why this Court should provide relief despite the arbitration clause. Instead, it simply states that "it would be unreasonable to expect the plaintiff to arbitrate a claim in Hong Kong." *See* Pl.'s Resp. to Ltr. Renewing Mot. to Dismiss, ECF No. 24 at 2.

14

Accordingly, Count Four of the second amended complaint is dismissed as well.

## V. Conclusion

For the forgoing reasons, the second amended complaint is dismissed in its entirety. The Court respectfully directs the Clerk of the Court to enter judgment and close this case.

SO ORDERED.

   /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    November 30, 2021
             Brooklyn, New York